1

2

3  MATTHEW RIGHETTI State Bar No. 121012
   JOHN GLUGOSKI State Bar No. 191551
4  MICHAEL RIGHETTI State Bar No. 258541
   RIGHETTI GLUGOSKI, P.C.
5  456 Montgomery Street, Suite 1400
   San Francisco, CA 94101
6  Telephone:  (415) 983-0900 / Facsimile:  (415) 397-9005
   Email: matt@righettilaw.com

7  Attorneys for Plaintiff,
   ANDREW J. PRIZLER
8

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13  ANDREW J. PRIZLER, individually and on behalf)  CASE NO.:  2:12-cv-06016-SVW-RZ
    of all others similarly situated,            )
14                                               )
                                                 )
15                    Plaintiffs,                )  Judge:    Hon. Stephen V. Wilson
                                                 )
16  vs.                                          )
                                                 )  **PLAINTIFFS' MEMORANDUM OF**
17  AT&T MOBILITY SERVICES, INC., and DOES )      **POINTS AND AUTHORITIES IN**
    1 through 50 inclusive,                      )  **SUPPORT OF PRELIMINARY**
18                                               )  **APPROVAL OF SETTLEMENT WITH**
                                                 )  **DEFENDANT**
19                    Defendants.                )
                                                 )  Date:     January 13, 2014
20                                               )  Time:     1:30 p.m.
    _____        Courtroom: 6, Second Floor
21

22

23

24

25

26

27

28

TABLE OF CONTENTS

I.  INTRODUCTION................................................................2

II. THE TWO STEP APPROVAL PROCESS................................4

III.THE PROPOSED SETTLEMENT..........................................5

     A. The Experience of Class Counsel and Defense Counsel.....……...7
     B. Discovery Conducted in the Case........……...............................7
     C. The Risks Inherent in the Certification Process.....................10
     D. The Settlement Is Fair and Reasonable...............................…....11

          1.  Anticipated Recovery for Class Members.................12

     E. The Notice Program Complies with the
        Requirements of FRCP Rule 23...............................................12
     F. Conditional Certification for the Settlement Classes...............13

IV.    THE PROPOSED CLAIM ADMINISTRATOR IS QUALIFIED.....17

V. ACTIONS REQUESTED FOR PRELIMINARY APPROVAL....……...18

# TABLE OF AUTHORITIES

**Pages**

**FEDERAL CASES**

*Aguiar v. Cingular Wireless, LLC*
C.D. Cal. Case No.  06-cv-08197-DDP-AJW……………………………………...2

*Class Plaintiffs v. City of Seattle*
955 F.2d 1268 (9th Cir. 1992)…………………………………………………...4

*Comcast Corp. v. Behrend*
-- U.S. --, 133 S.Ct. 1426, -- L.Ed. – (2013)………………………………..11

*Eisen v. Carlisle & Jacquelin*
417 U.S. 156 (1974) …………………………………………………………..12

*Hammon v. Barry*
752 F. Supp 1087 (D.D.C. 1990)……………………………………………….6

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ………………………………………………....5

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*
163 F.R.D. 200 (S.D.N.Y. 1995)……………………………………………….4

*In re Wireless Facilities, Inc. Sec. Litig. II*
253 F.R.D. 607 (S.D. Cal. 2008)…………………………………………......6

*Leyva v. Medline Indus. Inc.*
11–56849, —— F.3d ——, 2013 WL 2306567 (9th Cir. May 28, 2013)………….17

*Mars Steel Corp. v. Continental Illinois Bank and Trust Co.*
834 F.2d 677 (7th Cir. 1987)………………………………………………….6

*Nat'l Rural Telecommc'ns Coop*
221 F.R.D. 526 (C.D. Cal 2004)…………………… …………………………6

*Officers for Justice v. Civil Service Com.*
688 F.2d 615, (9th Cir. 1982)………………………………………………….4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Oppenlander v. Standard Oil C. (Indiana)*
64 F.R.D. 597 (D. Colo. 1974)................................................................6

*Utility Reform Project v. Bonneville Power Admin.*
869 F.2d 437 (9th Cir. 1989)..............................................................4

Other Authorities

May 14, 1992 Opinion Letter from California Division of Labor Standards
Enforcement Chief Counsel, Tom Cadell, Jr................................................15

*Manual for Complex Litigation* (4th Ed.) §21.632..........................................5

*Manual for Complex Litigation* (4th Ed.) §21.633..........................................5


Rules and Statutes

Cal. Lab. Code §2698................................................................2

FRCP Rule 23(e) ..................................................................5

Fed. R. Civ. P. § 23(c)(2) ........................................................13

*Newberg* §11.51..................................................................6

*Newberg* §11.47..................................................................6

Rule 23(b)(6)......................................................................7

Rule 23(a)........................................................................14

Cal. Lab. Code  §§17200-17208.....................................................2

Cal. Lab. Code  §510..............................................................2

Cal. Lab. Code  §201..............................................................2

Cal. Lab. Code  §202..............................................................2

Cal. Lab. Code  §203..............................................................2

TABLE OF AUTHORITIES—

1
2
Cal. Lab. Code  §226……………………………………………………………...2
3
Cal. Lab. Code  §1194……………………………………………………………...2
4
Cal. Lab. Code  §1197……………………..……………………………………….2
5
Cal. Lab. Code  §1197.1……………………………………………………………2
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF AUTHORITIES

# I.

## INTRODUCTION

On June 1, 2012, Plaintiff filed a class action lawsuit against AT&T Mobility Services, Inc. in the Los Angeles Superior Court, entitled *Prizler v. AT&T Mobility Services, Inc.,* Case No. BC485863 (the "Complaint"), alleging claims for: (1) failure to pay minimum wage for all hours worked unpaid overtime wages [Cal. Lab. Code §§510, 1194, 1197 and 1197.1 and I.W.C. Wage Order]; (2) failure to furnish timely and accurate wage statements [Cal. Lab. Code §226]; (3) failure to pay wages due upon termination [Cal. Lab. Code §§201, 202, 203]; (4) unlawful and/or unfair business practices [Cal. Bus. & Prof. Code §§ 17200-17208 (the "UCL)]; and; (5) civil penalties under PAGA for the Labor Code violations alleged in the first three causes of action [Cal. Lab. Code §2698, *et seq*.].

Plaintiff sought to represent a class consisting of "non-exempt individuals employed by AT&T in its retail stores in the State of California who were paid wage compensation from AT&T that included commission pay at any time" in the time period from June 1, 2008.  Plaintiff's central contention was that Defendants failed to properly calculate wages for Retail Sales Consultants ("RSCs") who both worked overtime and earned commissions attributable to the workweek in which they worked overtime.  Plaintiff contended that the amount of commissions were not included when calculating the "regular rate" resulting in underpayment of overtime wages.

On July 12, 2012, Defendants filed a Notice of Removal of Civil Action From State Court and removed the Action from Los Angeles Superior Court to this Court.

On August 23, 2012, the Parties stipulated that, as a result of a prior judicially approved class action settlement in *Aguiar v. Cingular Wireless, LLC,* C.D. Cal. Case No.  06-cv-08197-DDP-AJW, the Class Period in this action would be limited to claims arising on or after October 19, 2010 (Dkt. #11), which was approved in an Order

1
2
3    entered by the Court on October 27, 2012 (Dkt. #14).

4         Disclosure of relevant information resulted in a comprehensive evaluation of

5    these claims.    The discovery and investigation was followed by months of mediation

6    discussions facilitated by an experienced mediator resulting in an agreement to settle

7    this case in its entirety.    This settlement was supervised by the Honorable Carl West

8    (Ret.) who not only presided over a day-long mediation at the JAMS offices in Los

9    Angeles, but also oversaw several months of subsequent settlement discussions.[1]

10        The proposed settlement terms, subject to review by this Court, are outlined in

11   the attached Joint Stipulation For Class Action Settlement and Release of Claims

12   (hereinafter "Settlement Agreement").    (See, Ex. 1, Settlement Agreement.)[2]  The

13   proposed settlement provides for a non-reversionary payment of the settlement

14   amount of Five Million Dollars ($5,000,000.00) to a class defined as all persons who

15   worked for Defendants in California as a Retail Sales Consultant at any point from

16   October 19, 2010 through October 27, 2012, and, while working as an RSC during this

17   time period, worked overtime in any workweek and earned commissions attributable to

18   any workweek in which they worked overtime.    The lawsuit also sought – and

19   achieved – a modification to Defendant's payroll practices which took effect

20   November of 2012.

21        With this proposed settlement Plaintiff is satisfied that the goals of this

22   litigation have been achieved.    Pursuant to the terms of the Settlement Agreement

23   and in compliance with FRCP Rule 23, Plaintiff seeks preliminary approval of this

24

25        [1] Judge West is retired from eighteen years on the bench, spending the most
26   recent ten years as a judge with the Los Angeles County Superior Court's complex
     litigation panel.   Judge West currently works at JAMS in Los Angeles.

27        [2] All exhibits are attached to the Declaration of Matthew Righetti.
28

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT

settlement so notice can be sent to the settlement class with a claim form and exclusion form.

Settlement of a class action is a two-step process in which the Court needs to find that the proposed settlement is within "the ballpark of reasonableness" at the preliminary approval step so that notice can be sent to the class members advising them of the settlement terms and providing them with an opportunity to opt-out of the settlement.   Once notice has been sent and the class members have had the opportunity to submit claims, object to the settlement, exclude themselves from the settlement, and otherwise comment on the proposed settlement, the court presides over a final approval, or "fairness," hearing.

## II.

## THE TWO STEP APPROVAL PROCESS

As a matter of public policy, settlement is a strongly favored method for resolving disputes.   *See Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).   This is especially true in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.   *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).   As a result, courts exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims."   *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

In making a determination as to whether a class action settlement is fair, courts must consider several relevant factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and

views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).   Furthermore, courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

Pursuant to FRCP Rule 23(e), any settlement of class litigation must be reviewed and approved by the Court.   This is done in two steps: a preliminary review by the trial court and then a detailed review after the period during which notice is distributed to the class members for their comments and/or objections.   The *Manual for Complex Litigation* (4th Ed.) explains the two-step process at Chapter 21.61 "Judicial Role in Reviewing a Proposed Class Action Settlement." The first hearing involves a preliminary fairness evaluation with directions as to the notice of certification, proposed settlement and date of the final fairness hearing. *Manual* at §21.632 "Preliminary Fairness Review."

Assuming the Court preliminarily approves the settlement, the Court should order notice to the class. *Manual* at §21.633.   In the Notice, class members should be informed they have the opportunity to file a claim, request exclusion and present their views as to the proposed settlement. *Id.*   Finally, the notice should inform the class members of the time and place of the final fairness hearing. *Id.*

### III.

### THE PROPOSED SETTLEMENT

The Settlement, which provides valuable consideration for the Class Members,

reflects a reasonable compromise given the inherent risks and costs of litigation.   *See Nat'l Rural Telecommc'ns Coop.*, 221 F.R.D. at 526 ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the bush.'") (quoting *Oppenlander v. Standard Oil C. (Indiana)*, 64 F.R.D. 597 (D. Colo. 1974)).   Moreover, the parties, represented by competent counsel, conducted their settlement negotiations in good faith and at arm's length under the supervision of the Hon. Carl West (ret.).   *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair."). Courts presume the absence of fraud or collusion in negotiation of settlements unless evidence to the contrary is offered.   In short, there is a presumption that the negotiations were conducted in good faith. *Newberg* §11.51; see also *Mars Steel Corp. v. Continental Illinois Bank and Trust Co.*, 834 F.2d 677, 681 (7th Cir. 1987). Courts do not substitute their judgment for that of the proponents, particularly where settlement has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp 1087 (D.D.C. 1990).   While the recommendations of counsel proposing the settlement are not conclusive, the Court can properly take them into account, particularly if they have been involved in litigation for some period of time, appear to be competent, have experience with this type of litigation, and significant discovery has been completed.   See *Newberg* §11.47.

This proposed settlement was reached after a day-long mediation with the Honorable Carl West (Ret.) on December 4, 2012.   Following the mediation, Judge West facilitated extensive additional discovery, including conferences with the parties' experts, followed by months of subsequent settlement negotiations.   The

settlement was certainly reached as a result of "arm's length negotiations;" even after the initial terms were agreed upon in June 2013 the settlement process took another several months to complete. Plaintiff believes that the proposed settlement, including a total payout in the amount of Five Million Dollars ($5,000,000.00) and confirmation that Defendant has changed the payroll practice, attains the goals he set out to achieve when this litigation was initiated.

**A.     The Experience of Class Counsel and Defense Counsel**

Class counsel, Righetti Glugoski, P.C., specialize in the litigation of complex class action cases and, for the past twenty-five years have litigated dozens of wage and hour class actions such as the one at bar.   See, Decl. of M. Righetti, paras. 1-6. Having both tried several wage and hour class actions through the liability phase and handled many wage and hour cases in the state and federal courts of appeal Righetti Glugoski, P.C. is well aware of both the benefits – and the risks -- inherent in taking a wage and hour class action through certification and trial.

Defense counsel McGuireWoods, LLP, is an international law firm well versed in complex and class action litigation.

**B.     Discovery Conducted in the Case**

This case has been pending since June 1, 2012 and has been actively litigated over the course of the last eighteen months.   Prior to the filing of this action, class counsel investigated key aspects of the case.   During pre-certification discovery, plaintiffs served a FRCP 30(b)(6) deposition notice covering twenty-one topics and seeking sixteen categories of information.   Defendants produced extensive data in response to plaintiffs' discovery requests, including:

- Payroll Data for Class (three Excel files):   The Payroll Data for Class files contain information on each employee's earnings by pay period. The payroll records, also contains specific descriptions which provide information regarding the different pay items, including commissions and differential

payments.

- Defendants produced 2,445,146 records for 355,454 pay periods related to approximately 100 different earnings types.

- Time Detail 1-16 (16 separate Excel files):   The Time Detail files contain information regarding the specific number of hours worked and/or paid on a daily basis.   In addition, the Time Detail files provide a description of the specific type of work that the hours relate to (e.g. regular, overtime, or holiday hours).

  - Defendants produced almost 8 million records related to 1,308,505 days worked by 5,068 employees (4,353 RSCs and 715 ASMs).

- Payroll Data for Class:   The Prizler – Payroll Data for Class file contains a summary of the number of weekly hours worked by each potential class member and their corresponding job title for each work week.

  - This file contained records related to 308,078 work weeks and 11,266,794 hours.

- RSC wage types 1100 and 1080 by month earned production:   The RSC wage type 1100 and 1080 file contains payroll records specifically described as Commission (Mobility) or Cash AWD-Non-Disc (FLSA).   This file also contains a reference to the specific month for which the commission payments were earned.

  - This file contained 141,438 records related to Commission (Mobility) or Cash AWD-Non-Disc (FLSA) payments.

- 9598 data:   The 9598 data file contains additional commission payments (e.g. Txbl Non-Cash No Tax Adv) that are not included in the 1100 and 1080 file described above.

  - This file contained 195,232 records related to commission payments (e.g. Txbl Non-Cash No Tax Adv).

In order to determine the potential damages that result from the improper regular

rate of pay calculation, it was necessary to determine the actual premium wages paid to each employee on a weekly basis and the premium wages that would have been paid to each employee on a weekly basis had the payroll system properly calculated the regular rate of pay.  Thus, in order to determine the net amount of unpaid overtime premium wages due, it was necessary to recalculate the payroll records for over 5,000 individuals for the class period.

Plaintiff used the data provided by Defendants to determine the actual premium wages paid to each employee as the first preliminary step for determining the appropriate amount each employee should have been paid.  The payroll files produced included approximately 100 different earnings types (e.g., differential pay, commissions, holiday worked, meal period pay, etc.) which needed to be segregated between actual hours worked and compensable payments for non-work time.  In addition, any overtime related payments needed to be identified so that the premium portion of wages paid could be excluded from the regular rate of pay calculation.

Also included within the payroll files were records of the commission wages paid to each employee.  However, as a further complicating factor, these commission wages typically were paid in pay periods that did not match the pay period in which they were earned.  Thus, it was necessary to analyze each commission payment to determine the specific month for which it was earned.  In addition, the payroll records also contained some payments for overtime premiums related to commission wages.  Similar to the commission wages, commission premiums (or "True-Up" payments) would be paid in subsequent pay periods.  These True-Up payments also needed to be analyzed to determine the actual period for which they were earned.  The process of determining the period in which the commissions were earned required a significant amount of analysis because there appeared to be  inconsistencies between when the commission was earned versus when AT&T actual paid the commission

wages and related True-Up payments. These inconsistencies needed to be addressed for each of the three different types of commission wages ("Commission (Mobility)", "Cash AWD-Non-Disc (FLSA)", and "Txbl Non-Cash No Tax Adv").

Conducting a damages assessment was no easy feat. To summarize, in order to determine the number of hours worked (and those hours eligible for overtime payments), 8 million records were reviewed relating to 1,308,505 days worked for 5,068 employees. These daily time records showed the number of hours worked per day and the type of work performed (e.g. regular hours, holiday hours). The daily time records were used to determine the applicable number of overtime hours per week excluding any compensable time off. The actual weekly hours worked were then matched to the corresponding payroll records for each of the 100 earnings codes.

As another complicating factor, during the analysis of the above mentioned records it was determined that not all commission-related payments were included in the original production. After discussing this issue with AT&T's database expert, Defendants provided Plaintiff with two additional files that contained 336,670 additional commission records.

Based upon this review and numerous conferences with Defendants' experts Class Counsel and their expert were able to determine damages owed to class member totaled of approximately:

- $1,226,835 in back wages;
- $196,965 interest on the past due wages through the end of 2012; and
- $4,404,775 of potential Labor Code 203 "Waiting Time" penalties (i.e., 30 days of continuation wages for formerly employed class members).

Thus, Defendants' potential exposure totaled approximately $5,828,576.

## C.    The Risks Inherent in the Certification Process

At the time of settlement Plaintiff had obtained sufficient information to file a

certification motion.   The potential of losing on class certification and obtaining no monetary relief for the proposed settlement classes had to be weighed against the savings of settling before the certification hearing. Defendants facing wage and hour claims invariably argue that the relief is too individualistic to warrant class certification pursuant to *Comcast Corp. v. Behrend*, -- U.S. --, 133 S.Ct. 1426, -- L.Ed. – (2013).   The costs associated with further litigation of this case through trial were considered as well.   Balanced against these specific risks and the inherent risks of litigation, Plaintiff considered that Defendants had not only changed their practices, but had also offered significant monetary relief for the settlement class.

It appears that Defendants were inclined to settle for a number of reasons. Certain parts of plaintiffs' case were very strong.   For example, Plaintiff's payroll and timekeeping records showed discrepancies suggesting a wage calculation error. Based upon an exhaustive forensic review of Defendants' records Plaintiff was able to confirm that those same discrepancies existed for the class at large resulting in a strong inference that there was a common payroll practice resulting in miscalculation of overtime wages owed to Plaintiff and the class.   As discussed below, under the terms of this settlement, participating Class Members will net an average of approximately $785.45, or more. See, Declaration of David Breshears, p. 10, para. 33.   Significantly, after Plaintiff filed this lawsuit, Defendants changed their payroll practices in November 2012 to correctly calculate the overtime wages owed.   This policy/practice change mooted Plaintiff's claim for injunctive relief.

**D.     The Settlement Is Fair and Reasonable**

The amount offered in settlement will provide significant monetary remuneration to members of the settlement class.   Furthermore, many class action settlements are "claims made" settlements with a reversion (i.e., the defendant only pays out the actual amount "claimed" by class members -- and gets to retain any

unclaimed monies).    However, the instant settlement is a "total payout" settlement. In other words, the Defendants must pay the full Five Million Dollars ($5,000,000.00), regardless of how many claims are received.    Thus, after an offset for the employer's share of payroll taxes, any unclaimed funds will be redistributed pro-rata to the class members who timely submit valid claims.

### 1.    Anticipated Recovery for Class Members

As noted above, we can estimate the "floor" for class member recoveries. Based on the data supplied by Defendants, members of the settlement class will net no less than an average of $785.45.    As noted, this average amount may increase depending on the number of claims submitted by the class.[3]

When assessing the value of the monetary relief provided to the settlement classes in this case it must be remembered that the class members were timely paid overtime wages based on their hourly rate, yet Plaintiff alleged that the overtime rate calculations used by Defendants did not include commission compensation as required by California law.    Thus, class members were owed extra overtime wages in those weeks where both overtime was worked and commissions were earned in the same week.

### E.    The Notice Program Complies with the Requirements of FRCP Rule 23

Due process requires that reasonable notice of a settlement be given to all Class Members.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 165 (1974).   The notice plan here entails mailing the class notice to all Class Members.   The class notice is consistent with class certification notices approved by numerous state and federal courts, and is, under the circumstances of this case, the best notice practicable.

---

[3]    For example, if only 50% of the weeks worked are claimed, class members who timely submit valid claim forms will receive nearly twice as much per week worked than if 100% of the weeks worked are claimed.

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT

The proposed notice program provides clear information on: the nature of the action; the definition of the class certified; the class claims, issues, and defenses; the right of a Class Member to enter an appearance through an attorney at his or her own expense, if the Class Member so desires; the right of a Class Member to opt out of the Settlement; the binding effect of the Settlement on Class Members who do not opt out; the information used to calculate the Class Member's settlement share; and details on how the Class Member may contest that calculation.   Exhibit A, Proposed Notice; *See* Fed. R. Civ. P. § 23(c)(2).   The notice also fulfills the requirement of neutrality in class notices.   *See* 3 Newberg on Class Actions, 4th & 5th (Trial Practice Series) § 8.39.   As such, it complies with the notice requirements set forth in FRCP Rule 23.

Along with the Proposed Notice, class members will receive a Claim Form which indicates the "floor" value of each class member claim as well as how that amount was calculated.   (Ex. B, Proposed Claim Form.)   Should a class member wish to challenge the calculation of his/her claim then the parties have agreed to a speedy dispute resolution mechanism whereby class members can challenge the data submitted by Defendants on these issues. (Ex. A, Section 3 and Challenge Section on Page 3).   If the parties are unable to resolve any disputes, the claims administrator will make a binding and non-appealable decision regarding the dispute.   This provides an expedient and cost effective mechanism for resolving class member disputes without formal court intervention.   In addition to the Proposed Notice and Claim Form, each member of the settlement class will receive a Request for Exclusion Form which will allow them, at their option, to exclude themselves from the settlement class.   (Ex. C, Request for Exclusion Form.)

**F.     Conditional Certification for the Settlement Classes**

The Settlement Agreement provides for conditional certification of a class defined as follows:

1
2
3       All persons who (a) worked for AT&T in California as a Retail
4   Sales Consultant for a period of time between October 19, 2010 and
5   October 27, 2012, and (b) worked overtime **and** earned commissions in
6   the same workweek in which s/he worked overtime.
7       The parties stipulate and agree, for settlement purposes, that the requisites for
8   establishing class certification with respect to each of the Settlement Classes defined
9   above are met. (Ex. A, ¶30.)    The requirements necessary to certify each of the
10  proposed classes are also established herein.
11      Rule 23 (a) of the Federal Rules of Civil Procedure provides the following
12  prerequisites to certification a class action:
13
14          One or more members of a class may sue or be sued as representative
            parties on behalf of all only if (1) the class is so numerous that joinder of
            all members is impracticable, (2) there are questions of law or fact
15          common to the class, (3) the claims or defenses of the parties are typical
            of the claims or defenses of the class, and (4) the representative parties
16          will fairly and adequately protect the interests of the class.
17  In addition to the above, Rule 23(b)(3) of the Federal Rules of Civil Procedure
18  requires that questions of law or fact common to the members of the class
19  predominate over any questions affecting only individual members, and that a class
20  action is superior to other available methods for adjudicating the case.    The
21  settlement class here is ideally suited for class treatment.
22      The settlement class is comprised of over four thousand current and former
23  non-exempt Retail Sales Consultant employees who worked for Defendants during
24  the class period.    This number amply satisfies the numerosity requirement.
25      Based on a careful review of the class member records supplied by Defendants
26  it was apparent that Defendants maintained a uniform payroll policy and/or practice
27  which miscalculated the overtime wages owed for weeks in which Retail Sales
28  Consultants earned commissions.    As a result, the predominate class-wide common

issue for all settlement class members is whether the method used by Defendants' to calculate overtime wages for class members complied with California law. See, Decl. M. Righetti, para. 7.

The proposed class representative, Andrew J. Prizler, worked as a Retail Sales Consultant for Defendants during the class period.   Mr. Prizler's claims are typical, in fact identical, as compared to the claims of the other class members as he sought to recover the balance of overtime wages due for those weeks where he worked overtime and earned a commission.   Neither Mr. Prizler, nor class counsel, possess any conflicts which would prevent them from adequately representing the class. (Dec. of M. Righetti, para. 8; Ex. 3, Decl. of A. Prizler).

A class action is the superior method for adjudicating the identical claims of the class members and the common issues of law and fact applicable to class predominate over any conceivable individual issues. Plaintiff and the class all share a common issue with regard to liability.   Key liability issues include:

- Whether the method used by Defendants to calculate overtime pay for non-exempt Retail Sales Consultants who earned commissions in a week where they also worked overtime hours complied with California law;
- If the answer to the preceding issue is in favor of Plaintiff, then whether Plaintiff and the class are entitled to either waiting time penalties for formerly employed class members, or penalties under the PAGA for violations of the Labor Code, and if so, the amount of such penalties.

California's method for calculating the overtime rate due to non-exempt workers is set forth in the May 14, 1992 Opinion Letter from California Division of Labor Standards Enforcement Chief Counsel, Tom Cadell, Jr.   (Ex. 5).

The rate will be established by adding all hours worked in the week and dividing that number into the total compensation for the week. This is

consistent with the provisions of *Skyline* since the hourly rates have already been established and what needs to be established now is the weighted average of those rates for purposes of overtime payment. This weighted average method is designed to ease both the bookkeeping problems encountered by the employer and the enforcement problems encountered by the DLSE. There will be times when the worker will receive less under this method than he or she would under the "rate in effect" method. However, it is just as likely (or more likely) that the opposite will happen and the worker will recover more under the weighted average method.

In the case at bar where the non-exempt Retail Sales Consultants were paid hourly plus commission the following example is apt:

**Example: Hourly + Commission**

Let us say that the employee is paid $10 per hour and also received a commission on all sales made. For this example, we will assume that s/he worked 45 hours and made $300 in commissions. Thus, the regular rate is computed as:

Total Compensation = ($10/hr * 45 hours) + $300 commissions = $750

$$\frac{\text{Total Compensation} = (\$10/hr * 45\,hours) + \$300\,commission = \$750}{\text{Total Hours Worked} = 45} = \$16.67\,/\,hr$$

So, this employee's regular rate of pay is $16.67/hr. Thus, for any overtime hours worked in a week, the employee must be paid 1.5 times this rate. In a case of this nature alleging that the calculation of overtime was flawed one determines the proper overtime amount by calculating how much money should have been paid and subtracting how much money <u>was</u> paid. How much the employee should have been paid for all hours worked past 40 = $16.67/hr x 1.5 x 5 hours = $125.03. In this example, the employee was paid for those hours and for the overtime based on the

hourly rate. Thus, what s/he was actually paid = $10/hr x 5 hours x 1.5 = $75.   So, the total due employee for overtime = $125.03 - $75 = $50.03.

While the amount of recovery for each class member is necessarily based on a review of each class member's records it is clear that the calculation of individual damages should not, by itself, impede certification where there exists a common method for the calculation based upon available records.   As the Ninth Circuit has reiterated post- *Comcast,* "[i]n this circuit ... damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc.,* 11–56849, —— F.3d ——, 2013 WL 2306567, at *3 (9th Cir. May 28, 2013) (quoting *Yokoyama,* 594 F.3d at 1094). Properly understood, *Comcast* stands for the proposition that "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability" for a class to be certified under Rule 23(b) (3).   Here, as in *Levya,* Plaintiff asserts that damages could be readily calculated on a classwide basis based on the Defendants' own admissions in the notice of removal with respect to the Plaintiff's wage and hour claims. *Id.*   Thus, it is clear that in this case "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Id.*

## IV.

## THE PROPOSED CLAIM ADMINISTRATOR IS QUALIFIED

The parties have agreed to use Gilardi & Company as the Claim Administrator. Plaintiff requests that the Court approve this appointment.   Gilardi & Company is well qualified to handle the notice and administration duties.   See, Ex. 3.

///

# V.

## ACTIONS REQUESTED FOR PRELIMINARY APPROVAL

Plaintiff respectfully requests this Court, as part of the Preliminary Approval process, do the following:

3.      Review the proposed settlement (Exhibit 1);

2.      Consider whether the proposed settlement preliminarily appears to be fair and adequate and whether the proposed settling Plaintiff class preliminarily appears to meet the certification criteria of numerosity, commonality, typicality, superiority, and adequacy of representation;

3.      Review the proposed form of the Notice, the Claim Form and the Exclusion Form (Attached as Exhibits A, B and C, respectively);

4.      Confirm Righetti Glugoski, P.C. as class counsel.

5.      Confirm Andrew J. Prizler as the class representative for the Class;

6.      Approve Gilardi & Company as the Claims Administrator for this case; and

7.      Enter an order preliminarily approving the proposed settlement on a class basis, directing notice be given to the class, and setting a hearing for Final Approval of the proposed settlement.

Respectfully submitted,

DATED: December 2, 2013          **RIGHETTI · GLUGOSKI, P.C.**

s/Matthew Righetti

_____
Matthew Righetti, Esq.
Attorneys for Plaintiff

1

2

## **PROOF OF SERVICE**

3

STATE OF CALIFORNIA

4

5

I am employed in the County of San Francisco, State of California. I am over the age of 18 and not a party to the action. My business address is Righetti Glugoski, P. C., 456 Montgomery Street, Suite 1400, San Francisco, California, 94104.

6

7

On Monday, December 02, 2013 I served the foregoing document described as:

8

9

10

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PRELIMINARY APPROVAL OF SETTLEMENT**

11

12

on the interested parties by administering a true copy in sealed envelopes addressed as follows:

13

14

15

16

17

McGuire Woods, LLP
Matthew C. Kane
mkane@mcguirewoods.com
Sabrina Beldner
sbeldner@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067

18

19

20

(X)   **VIA ECF ELECTRONIC MAIL**
        By emailing the above documents referenced to the recipients listed herein.

21

22

        I declare under penalty of perjury under the laws of the State of California that the above is true and correct and was executed on Monday, December 02, 2013, at San Francisco, California.

23

24

_SARAH MINKUS_

25

26

27

28

PROOF OF SERVICE