MATTHEW RIGHETTI State Bar No. 121012
JOHN GLUGOSKI State Bar No. 191551
MICHAEL RIGHETTI State Bar No. 258541
RIGHETTI GLUGOSKI, P.C.
456 Montgomery Street, Suite 1400
San Francisco, CA 94101
Telephone:  (415) 983-0900 / Facsimile:  (415) 397-9005
Email:      matt@righettilaw.com

Attorneys for Plaintiff,
ANDREW J. PRIZLER

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW J. PRIZLER, individually and on behalf of all others similarly situated, | CASE NO.:  2:12-cv-06016-SVW-RZ |
| Plaintiffs, | Judge:    Hon. Stephen V. Wilson |
| vs. | **PLAINTIFF'S NOTICE MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM IN SUPPORT OF MOTION** |
| AT&T MOBILITY SERVICES, INC., and DOES 1 through 50 inclusive, | |
| Defendants. | Date:   September 15, 2014 |
| | Time:  1:30 p.m. |
| | Courtroom: 6, Second Floor |

# TABLE OF CONTENTS

I.     INTRODUCTION/SUMMARY OF ARGUMENT…………….……………4

II.    BACKGROUND………………………………………………..….…….…..6

       A.  The Litigation……………………………………………………6

       B.  Negotiation and Preliminary Approval
           of the Settlement…………...........................................................7

III.   SUMMARY OF SETTLEMENT TERMS…………………………………10

       A. The Class………………………………………………………..10

       B. The Settlement Payments and
          Calculations…………………………………………………..11

IV.    THE SETTLEMENT SATISFIES THE STANDARD FOR
       FINAL APPROVAL ………………………………………………………12

       A. The Parties have Agreed to a
          "Fair, Reasonable, and Adequate" Settlement…………………………..14

           1.  Given the Risks of Litigation, the
               Value of the Settlement Supports Approval………………………...14

           2. The Proposed Settlement is Fair and Reasonable………...............19

           3.  The Investigations and Discovery Undertaken
               by the Parties Supports Approval…………………………...….19

           4.  The Experience and Views of Counsel
               Support Approval……………………………………………21

MOTION FOR FINAL APPROVAL OF CLASS ACTION

5.  The Fairness of Distribution Supports
Approval…………………………………………………….………22

6.  Class Members Responded Extremely Favorably
to the Settlement…………………………………………….………24

OBJECTIONS…………………………………………………………...25

a.   Mr. Hollingsworth……………………………………………..…25

b.  Mr. Bradley………………………………………………………26

V.    CONCLUSION……………………………….…………………………29

MOTION FOR FINAL APPROVAL OF CLASS ACTION

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aguiar v. Cingular Wireless, LLC,*
(2009) *C.D. Cal. Case No. 06-cv-08197-DDP-AJW*…………………..………………5, 7

*AT&T Mobility Wireless Data Servs. Sales Litig.,*
(2010) 270 F.R.D. 330, 346……………………………………………………....13

*Boyd v. Bechtel Corp.*
(1979) 485 F. Supp. 610………………………………………………………15

*Churchill Village, LLC v. General Electric*........................................................ 13, 19, 21
(2004) 361 F.3d 576

*Class Plaintiffs v. City of Seattle,*
(1992) 955 F.2d 1268, 1276……………………………………………………12, 13

*Collins v. Cargill Meat Solutions Corp.*
(2011) 274 F.R.D. 294…………………………………………………………....28

*Dalal Abedrabo  et al v. AT&T Mobility LLC  et al*
*California Central District Court, Case No. 8:11-cv-01388*……………………………26

*GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*
(1995) 55 F.3d 768…………………………………………………………….15

*Gong-Chun v. Aetna Inc.*
(2012) 2012 WL 2872788……………………………………………………....15

*Linney v. Cellular Alaska Partnership*
(1998)151 F.3d 1234 …………………………………………………….…….15

*Michael Milken & Assocs. Sec. Litig.*
(1993) 150 F.R.D. 57…………………………………………………………...24

*Mullane v. Cent. Hanover Bank & Trust Co.*
(1950) 339 U.S. 306……………………………………………………......23

*Nat'l Rural Telecommc'ns Coop. v. Directv, Inc.*
(2004) 221 F.R.D. 523……………………………………………..……………………19

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
(1982) 688 F.2d 625……………………………...…….…….…..12, 13, 14, 15, 19, 21, 25

*Oppenlander v. Standard Oil C. (Indiana)*
 (1974) 64 F.R.D. 597\...................................................................................................19

*Pac. Enters. Sec. Litig.,*
(1995) 47 F.3d 373, 377…………………………………………….……....13

*Prudential Sec. Inc. Ltd. P'ships Litig.,*
(1995) 163 F.R.D. 200, 209……………………………….………….........12

*Shlensky v. Dorsey*
(1978) 574 F.2d 131………………………………………………..……...25

*Silber v. Mabon,*
(1994) 18 F.3d 1449……………………………………………….....……22

*Stoetzner v. United States Steel Corp.,*
(1990) 897 F.2d 115……………………………………………….……….25

*Torrisi v. Tuscon Elec. Power Co.,*
(1993) 8 F.3d 1370…………………………………………………….....14

*Utility Reform Project v. Bonneville Power Admin.,*
*(1989) 869 F.2d 437, 443*…………………………………………………..12

*Van Bronkhorst v. Safeco Corp.,*
(1976) 529 F.2d 943, 950………………………………………………...12

*Vasquez v. Coast Valley Roofing, Inc.,*
*(2009) 670 F.Supp.2d 1114*…………………………………………….......28

1

# **RULES & STATUTES**

2

3   California Labor Code 201……………………………………………………...…6

4   California Labor Code 202………………………………………………………...6

5   California Labor Code 203…………………………………………………6, 18

6   California Labor Code 226………………………………………………………...6

7   California Labor Code 510………………………………………………………...6

8   California Labor Code 1194………………………………………………………6

9   California Labor Code 1197………………………………………………………6

10  California Labor Code 1197.1……………………………………………………6

11  California Labor Code 2698………………………………………………………6

12  California Business and Professions Code 17200-17208…………………………6

13  Civil Code Section 1542…………………………………………………………28

14  IWC Wage Order……………………………………………………………...…6

15  The Private Attorneys General Act of 2004……………………………………...27

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

To all interested parties:

PLEASE TAKE NOTICE that on Monday, September 15, 2014, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6 of this Court, located at 312 North Spring Street, Los Angeles, CA 90012-4701, before the Honorable Stephen V. Wilson, Plaintiff Andrew J. Prizler will and hereby does move for final approval of the settlement of this class action as set forth in the Settlement Agreement, which the parties initially filed with the Court as Exhibit 3 to the Declaration of Matthew Righetti in Support of Preliminary Approval of Settlement With Defendant ("Declaration of Matthew Righetti in Support of Preliminary Approval of Settlement"- Dkt. #16-2), to which the Court granted preliminary approval (Dkt. #21). More specifically, the Plaintiff moves for an order:

(1)    adjudicating that the Settlement is fair, reasonable, and adequate;

(2)    directing distribution of settlement benefits to Participating Class Members in accordance with the Settlement;

(3)    approving and directing the payment of $7,500.00 to the California Labor and Workforce Development Agency ("LWDA") as its share of the settlement of the civil penalties;

(4)    binding all Participating Class Members who did not timely opt out of the Settlement to the release of claims in favor of AT&T as set forth in the Settlement;

(5)    directing the Clerk of the Court enter the Court's order as a final judgment; and

(6)    without affecting the finality of the final judgment, reserving the Court's continuing jurisdiction over the parties for the purposes of implementing, enforcing, and/or administering the Settlement.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

MOTION FOR FINAL APPROVAL OF CLASS ACTION

This motion is made on the grounds that the Settlement is the product of arms' length, good-faith negotiations; is fair and reasonable to Class Members; and should be approved, as more fully discussed in the accompanying Plaintiff's Memorandum in Support of Motion for Final Approval of Class Action Settlement ("Memorandum in Support").

This motion is based on this notice; the accompanying Memorandum in Support, Declaration of Matthew Righetti in Support of Motion for Final Approval of Class Action Settlement, and the proposed Order Granting Final Approval of Class Action Settlement and Entering Final Judgment; the Court's record of this action, including but not limited to the Declaration of Matthew Righetti in Support of Preliminary Approval of Settlement (Dkt. #16-2) and the Order Granting Preliminary Approval of Settlement (Dkt. #21); all matters on which the Court may take notice; and such oral and documentary evidence presented at the hearing on the motion.

///

///

///

///

///

///

///

///

MOTION FOR FINAL APPROVAL OF CLASS ACTION

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiff Andrew J. Prizler ("Prizler" or "Plaintiff") filed a class action lawsuit against defendant AT&T Mobility Services, Inc. ("AT&T Mobility"), alleging claims for failure to pay minimum wage for all hours worked, unpaid overtime wages, failure to furnish timely and accurate wage statements, failure to pay wages due upon termination, unlawful and/or unfair business practices and civil penalties under PAGA for Labor Code violations.

Plaintiff sought to represent a class consisting of "non-exempt individuals employed by AT&T Mobility in its retail stores in the State of California who were paid wage compensation from AT&T Mobility that included commission pay at any time" in the time period beginning June 1, 2008.  Plaintiff's central contention was that Defendant failed to properly calculate wages for Retail Sales Consultants ("RSCs") who both worked overtime and earned commissions attributable to the workweek in which they worked overtime.  Plaintiff contended that the amount of commissions were not included when calculating the "regular rate" resulting in underpayment of overtime wages.  Although the RSCs were covered by a collective bargaining agreement Plaintiff was able to maintain these particular statutory claims in court.

On July 12, 2012, Defendant filed a Notice of Removal of Civil Action From State Court thereby removing the Action from Los Angeles Superior Court to this Court. (Dkt. #1).

On August 23, 2012, the Parties stipulated that, as a result of a prior judicially approved class action settlement in *Aguiar v. Cingular Wireless, LLC*, C.D. Cal. Case No. 06-cv-08197-DDP-AJW, the Class Period in this action would be limited to claims arising on or after October 19, 2010 (Dkt. #11), which was approved in an Order entered by this Court on October 27, 2012 (Dkt. #14).

Plaintiff's investigation and Defendant's disclosure of relevant information in discovery resulted in a comprehensive evaluation of these claims.  The investigation and discovery, including both retention and consultation with a database analysis expert and extensive review of records, was followed by months of mediation discussions facilitated by an experienced mediator.  The result was an agreement to settle this case in its entirety.  This settlement was supervised by the Honorable Carl West (Ret.).  Judge West not only presided over a day-long mediation at the JAMS offices in Los Angeles, but also oversaw several months of subsequent settlement discussions.  The proposed settlement was preliminarily approved by this Court on March 6, 2014 (Dkt. # 11).

Plaintiff now returns to the Court seeking final approval of the proposed settlement.  The notice and claim administrator, Gilardi & Company, has confirmed that the court approved notice was mailed to 4,675 Class Members.  2,614 Class Members have responded favorably to its terms and filed valid claims.  Two Class Members filed objections to the Settlement, and seven Class Members (significantly less than one percent of the total) timely opted out of the Settlement.

MOTION FOR FINAL APPROVAL OF CLASS ACTION

With this resounding endorsement of the Settlement in hand, Plaintiff now moves for final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure.

## II.   BACKGROUND

### A.   The Litigation.

On June 1, 2012, Plaintiff Andrew Prizler commenced a proposed class action against AT&T Mobility in the Superior Court of California, County of Los Angeles, Case No. BC485863 ("the Action").

On July 12, 2012, AT&T Mobility filed a Notice of Removal of Civil Action From State Court and removed the Action from Los Angeles Superior Court to the United States District Court for the Central District of California, where it is now pending. (Dkt. #1)

Plaintiff alleges claims for: (1) failure to pay minimum wage for all hours worked and unpaid overtime wages [Cal. Lab. Code §§510, 1194, 1197 and 1197.1 and I.W.C. Wage Order]; (2) failure to furnish timely and accurate wage statements [Cal. Lab. Code §226]; (3) failure to pay wages due upon termination [Cal. Lab. Code §§201, 202, 203]; (4) unlawful and/or unfair business practices [Cal. Bus. & Prof. Code §§ 17200-17208 (the "UCL")], and; (5) civil penalties under PAGA for the Labor Code violations alleged in the first three causes of action [Cal. Lab. Code §2698, *et seq.*].  Plaintiff sought to represent a class consisting of "non-exempt individuals employed by AT&T Mobility in its retail stores in the State of California who were paid wage compensation from AT&T

Mobility that included commission pay at any time" in the time period from June 1, 2008. (Dkt.# 1)

On August 23, 2012, the Parties stipulated that, as a result of a prior class action settlement in *Aguiar v. Cingular Wireless, LLC*, C.D. Cal. Case No. 06-cv-08197-DDP-AJW, the Class Period in this action would be limited to claims arising on or after October 19, 2010, which was approved in an Order entered by the Court on August 27, 2012. (Dkt. #14)

AT&T Mobility has at all times contested Plaintiff's claims, and has contended that the case should not be certified as a class action. (Dkt. #16-2)

**B.     Negotiation and Preliminary Approval of the Settlement**

Both sides engaged in litigation and discovery concerning these claims.  On or around December 4, 2012, the parties attended a mediation presided over by respected class-action mediator and retired Superior Court Judge Carl West in an attempt to resolve the Action.  The case did not resolve at that time.  Over the next six months, the parties continued their arms-length negotiations, assisted by Judge West, resulting in this settlement. (Dkt. #16-2, Exhibit 1, ¶21).

In November 2012, Defendant implemented a new payroll methodology with respect to the calculation and payment of overtime premiums arising out of commission payments to Class Members. (Dkt. #16-2, Exhibit 1, ¶20).     This policy change by Defendant mitigated the alleged damages claim as of November 2012.

MOTION FOR FINAL APPROVAL OF CLASS ACTION

The Settlement represents a compromise and settlement of disputed claims. Plaintiff, AT&T Mobility, and their counsel have concluded that the Settlement is advantageous, considering the risks and uncertainties to each side of continued litigation. The parties and their counsel have further determined that the Settlement is fair, reasonable, and adequate and is in the best interests of all parties.

Plaintiff submitted a motion for preliminary approval of the settlement on December 2, 2013. (Dkt. #16)  On March 6, 2014, the Court issued an order granting preliminary approval (subject to some revisions to the Class Notices and the Settlement Agreement) setting various deadlines, approving the notice plan and appointing Gilardi & Company ("Gilardi") as the notice administrator.  (Dkt. #21)   Following preliminary approval, on April 3, 2014, Gilardi received from the Defendant a list of the names, addresses, Social Security Numbers ("SSNs"), and workweeks of individuals in the defined class.  Gilardi formatted the list for mailing purposes, removed duplicate records, and processed the names and addresses through the National Change of Address Database to update any revised addresses on file with the United States Postal Service ("USPS"). (See Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶2).

On April 23, 2014, Gilardi mailed the court approved Notice of Proposed Class Action Settlement, the Claim Form, and the Request for Exclusion Form (collectively "Notice Packet") to the 4,675 names on the class list provided by AT&T Mobility at the United States Post Office located in Sacramento, California.  (Exhibit 3 to Declaration of

Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶3).

On April 23, 2014, Gilardi activated a case website at www.prizlersettlement.com where class members could obtain information about the Settlement, submit online claims, and download copies of the Notice Packet and other case-related documents. (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶6).

On March 18, 2014, Gilardi established a toll-free telephone number that class members could call and listen to Frequently Asked Questions, request that the Notice Packet be mailed to them, or request to speak to a live operator.  The phone line has been staffed with English and Spanish speaking operators available Monday through Friday between the hours of 7:00 a.m. and 5:00 p.m. Pacific Time. (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶7). Gilardi received 87 Notice Packets returned by the USPS with forwarding addresses. These Notice Packets were immediately re-mailed to the forwarding addresses supplied by the USPS. Since mailing the Notice Packets to the class members, Gilardi & Company received 248 Notice Packets returned by the USPS with undeliverable addresses. Through a third party locator service, address searches were performed for these Notice Packets and Gilardi & Company was able to find updated addresses for 173 of those individuals. Gilardi & Company re-mailed Notice Packets to those updated addresses. The June 7, 2014, deadline for Class Members to opt out and object has now passed.  As of August 4, 2014, two class members have objected to the Settlement.  To date, Gilardi

MOTION FOR FINAL APPROVAL OF CLASS ACTION

has received 13 timely (and 1 late) opt out requests.  Of the 14 requests to opt out, 6 also filed valid claims.  According to the Notice Packet, the valid claims take force.  Thus, there are 7 timely and valid opt-outs -- a bit more than one tenth of one percent of the Class. (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶4, 5, 9, 11)

## III.   SUMMARY OF SETTLEMENT TERMS

The following summarizes the material elements of the Settlement.

### A.   The Class

The class covered by the Settlement (the "Class") is defined as follows:

> All persons who worked for Defendants in California as a Retail Sales Consultant at any point from October 19, 2010 through October 27, 2012, and, while working as an RSC during this time period, worked overtime in any workweek and earned commissions attributable to any workweek in which they worked overtime;

(See Dkt. #16-2, Exhibit 1, ¶5 to Declaration of Matthew Righetti.)  Based on the count of 4,675 Class Members, less the 7 who elected not to participate, there are 4,668 Class Members. (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶11).  There were 2,616 valid and approved claim forms received.  Of those, 109 claim forms were late but otherwise valid so the parties have agreed to approve them.  (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶9).  Two claim forms were deemed deficient and were not corrected despite efforts to obtain corrections.  Thus, those two

claims forms have been deemed invalid.   In sum, there are 2,614 class members participating in the Settlement (the "Participating Class Members").   See, (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶10).

### B.     The Settlement Payments and Calculations.

If the Court grants Plaintiff's motion for final approval, AT&T Mobility will pay the Settlement Amount of $5,000,000.00 to settle this case on a class wide basis.  (Dkt. #16-2, Exhibit 1, ¶34).   From the Settlement Amount the following items will be paid, subject to the Court's approval:

   (a) attorneys' fees of twenty-five percent ($1,250,000.00);

   (b) attorneys' costs ($15,000.00);

   (c) named plaintiff award ($10,000.00);

   (d) payment to the California Labor & Workforce Development Agency ($7,500.00); and

   (e) administration costs ($50,069.60).

Should the Court approve the above-referenced deductions from the Settlement Amount, the remaining "Net Settlement Amount," estimated at $3,667,430.40, will be available for payment to the Participating Class Members and will be distributed pro rata based on the 170,718 weeks worked by Participating Class Members during the class period.   At preliminary approval Plaintiff estimated that Participating Class Members would net an average of approximately $785.45, or more, based upon a per work week

estimate of $13.88.  That number is now significantly *higher* in that each Participating

Class Member will be receiving, on average, $1,403.00 based on a per workweek value

of $21.47.  (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re:

Notice And Claims Administration, ¶10).  Within each claim form distributed to the

Class Members, each Class Member was advised as to the estimated value of his/her

claim based upon $13.88 per work week and the number of work weeks for that Class

Member.  Class Members were afforded an opportunity to review and dispute the data to

be used in determining the estimated distribution.  Three Class Members disputed the

data but they were resolved by the Claims Administrator with the assistance of class

counsel.  Participating Class Members should be happily surprised with the fact that the

actual value of each claim has almost doubled as compared to the value set forth in the

notice.

## IV.    THE    SETTLEMENT    SATISFIES    THE    STANDARD    FOR    FINAL    APPROVAL

The law strongly favors settlement of lawsuits.  *See Utility Reform Project v.*

*Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Van Bronkhorst v. Safeco*

*Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting "overriding public interest" supports

settling class actions).  This is particularly true in class actions and other complex cases

where substantial resources can be conserved by avoiding the time, cost, and rigors of

formal litigation.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1992); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As a result, courts exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). A district court may thus approve a "fair, reasonable, and adequate" class action settlement. Fed. R. Civ. P. 23(e)(2). The Ninth Circuit will not reverse the approval of a class settlement absent a "strong showing" of a "clear abuse of discretion." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (quoting *Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

A district court determines whether to approve a class settlement through a two-step process. First, a court will conduct a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (internal quotations omitted). On March 6, 2014, this Court granted preliminary approval of the Settlement. (Dkt. #21)

Second, a court will make a final determination of whether a settlement is "fair, reasonable, and adequate" under Rule 23(e). Courts should make this determination by considering a variety of factors, including: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., LLC v. GE*, 361 F.3d

-13-

566, 575 (9th Cir. 2004) (citation omitted); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (propounding same set of factors). This list is not exhaustive, and the importance of its factors will vary depending on the circumstances of a case. *Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). In applying these factors and deciding whether to approve a class settlement, a district court should limit its evaluation "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

A.   **The Parties have Agreed to a "Fair, Reasonable, and Adequate" Settlement.**

The factors established by the Ninth Circuit for evaluating class settlements demonstrate that the parties have reached a fair, reasonable, and adequate agreement. The significant risks inherent in continued litigation, the considerable amount offered to settle the case, the extensive investigations undertaken by the parties, the experience and views of counsel, the fact that AT&T Mobility modified its practices during the course of this case and the fairness of the distribution of Settlement Shares all support final approval of the Settlement.

**1.      Given the Risks of Litigation, the Value of the Settlement Supports Approval.**

The risks of continued litigation and the substantial monetary relief agreed to by the parties both favor final approval of the Settlement.   A court should evaluate a settlement by considering its proposed amount, the likelihood that the Plaintiffs will prevail, and the probable damages the Plaintiffs would receive upon prevailing.  *See In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.").  After weighing these considerations, a court may approve a settlement even if it entails a mere 'fraction of the potential recovery," because "[c]ompromise is the very nature of settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 618 (N.D. Cal. 1979); *see also Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.") (emphasis in original); *Gong-Chun v. Aetna Inc.*, 2012 WL 2872788, at *15 (E.D. Cal. 2012) ("Although a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) (internal citations and quotation marks omitted)).

Here, the Settlement merits approval because AT&T Mobility changed its practices

and agreed to pay a reasonable compromise of plaintiffs' potential recovery, while plaintiffs would face uncertainty if this litigation continued. The amount offered in the Settlement also supports its approval when compared to the amounts in dispute. As Plaintiff explained to the Court at preliminary approval, in order to determine the potential damages that result from the allegedly improper regular rate of pay calculation, it was necessary to determine the actual premium wages paid to each employee on a weekly basis and the premium wages that would have been paid to each employee on a weekly basis had the payroll system calculated the regular rate of pay, according to Plaintiffs' methodology. Thus, in order to determine the net amount of unpaid overtime premium wages allegedly due, it was necessary to recalculate the payroll records for 4,675 individuals for the class period. This was a laborious process.

Plaintiff used the data provided by Defendant to determine the actual premium wages paid to each employee as the first preliminary step for determining the amount Plaintiff alleges each employee should have been paid. The payroll files produced included approximately 100 different earnings types (e.g., differential pay, commissions, holiday worked, meal period pay, etc.) which needed to be segregated between actual hours worked and compensable payments for non-work time. In addition, any overtime related payments needed to be identified so that the premium portion of wages paid could be excluded from the regular rate of pay calculation.

Also included within the payroll files were records of the commission wages paid to each employee. However, as a further complicating factor, these commission wages

typically were paid in pay periods that did not match the pay period in which they were earned due to commission cycles. Thus, it was necessary to analyze each commission payment to determine the specific month for which it was earned. In addition, the payroll records also contained some payments for overtime premiums related to commission wages. Similar to the commission wages, commission premiums (or "True-Up" payments) would be paid in subsequent pay periods. These True-Up payments also needed to be analyzed to determine the actual period for which they were earned. The process of determining the period in which the commissions were earned required a significant amount of analysis. This analysis had to be separately applied to each of the three different types of commission wages ("Commission (Mobility)", "Cash AWD-Non-Disc (FLSA)", and "Txbl Non-Cash No Tax Adv").

Conducting a damages assessment was no easy feat. To summarize, in order to determine the number of hours worked (and those hours eligible for overtime payments), 8 million records were reviewed relating to 1,308,505 days worked for 5,068 employees. These daily time records showed the number of hours worked per day and the type of work performed (e.g. regular hours, holiday hours). The daily time records were used to determine the applicable number of overtime hours per week excluding any compensable time off. The actual weekly hours worked were then matched to the corresponding payroll records for each of the 100 earnings codes.

As another complicating factor, during the analysis of the above mentioned records it was determined that not all commission-related payments were included in the original

production.   After discussing this issue with AT&T Mobility's database expert, Defendant provided Plaintiff with two additional files that contained 336,670 additional commission records.

Based upon this review and numerous conferences with Defendants' experts Class Counsel and their expert were able to determine alleged damages owed to class members totaled approximately:

- $1,226,835 in back wages;

- $196,965 interest on the past due wages through the end of 2012; and

- $4,404,775 of potential Labor Code 203 "Waiting Time" penalties (i.e., 30 days of continuation wages for formerly employed class members).

Thus, Defendant's potential exposure totaled approximately $5,828,576.00 (Dkt. 16-2, Exhibit 4, ¶31-36)

The proposed settlement includes both a total payout in the amount of Five Million Dollars ($5,000,000.00).   The proposed settlement attains the goals Plaintiff's set out to achieve when this litigation was initiated.   Furthermore, whereas many class action settlements are "claims made" settlements with a reversion (i.e., the defendant only pays out the actual amount "claimed" by class members -- and retains any unclaimed funds), the instant settlement is a "total payout" settlement.  In other words, the Defendant must pay the full Five Million Dollars ($5,000,000.00), regardless of how many claims are received.  Thus, after an offset for the employer's share of payroll taxes, any unclaimed

MOTION FOR FINAL APPROVAL OF CLASS ACTION

funds will be redistributed pro-rata to the class members who timely submit valid claims. This has resulted in almost doubling the initial estimated value of each claim for Participating Class Members.

### 2.     The Proposed Settlement Is Fair and Reasonable

The proposed settlement represents a fair compromise of plaintiffs' potential recovery, and is reasonable given the risks inherent in the case.   *See Nat'l Rural Telecommc'ns Coop. v. Directv, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, 'It has been held proper to take the bird in hand instead of a prospective flock in the brush.'")  (quoting *Oppenlander v. Standard Oil C. (Indiana)*, 64 F.R.D. 597, 624 (D. Colo. 1974).   Moreover, the Settlement provides the class members with prompt relief, whereas continued litigation would both increase costs and drag the possibility of recovery into the distant future. *See Churchill Vill.*, 361 F.3d at 575 (holding that courts should consider the "likely duration of further litigation" in deciding whether to approve class settlements).  The certain and monetary benefits provided by the Settlement warrant its final approval.

### 3.     The Investigations and Discovery Undertaken by the Parties Supports Approval.

The litigation that preceded the Settlement also warrants its approval.  A court may consider whether the parties have undertaken discovery in evaluating a class settlement.

*See Officers for Justice*, 688 F.2d at 625.  As noted, this was not an early or uninformed settlement.  This case has been pending since June 1, 2012 and was actively litigated and investigated before a settlement was reached.   During discovery, plaintiff served discovery covering twenty-one topics and seeking sixteen categories of information. Defendant produced extensive data in response to plaintiffs' discovery requests, including:

- <u>Payroll Data for Class (three Excel files)</u>:  The Payroll Data for Class files contain information on each employee's earnings by pay period. The payroll records, also contains specific descriptions which provide information regarding the different pay items, including commissions and differential payments.

  - Defendant produced 2,445,146 records for 355,454 pay periods related to approximately 100 different earnings types.

- <u>Time Detail 1-16 (16 separate Excel files)</u>:   The Time Detail files contain information regarding the specific number of hours worked and/or paid on a daily basis.   In addition, the Time Detail files provide a description of the specific type of work that the hours relate to (e.g. regular, overtime, or holiday hours).

  - Defendant produced almost 8 million records related to 1,308,505 days worked by 5,068 employees (4,353 RSCs and 715 ASMs).

MOTION FOR FINAL APPROVAL OF CLASS ACTION

- <u>Payroll Data for Class:</u>  The Prizler – Payroll Data for Class file contains a summary of the number of weekly hours worked by each potential class member and their corresponding job title for each work week.

  - This file contained records related to 308,078 work weeks and 11,266,794 hours.

- <u>RSC wage types 1100 and 1080 by month earned production:</u>  The RSC wage type 1100 and 1080 file contains payroll records specifically described as Commission (Mobility) or Cash AWD-Non-Disc (FLSA).   This file also contains a reference to the specific month for which the commission payments were earned.

  - This file contained 141,438 records related to Commission (Mobility) or Cash AWD-Non-Disc (FLSA) payments.

- <u>9598 data:</u>  The 9598 data file contains additional commission payments (e.g. Txbl Non-Cash No Tax Adv) that are not included in the 1100 and 1080 file described above.

  - This file contained 195,232 records related to commission payments (e.g. Txbl Non-Cash No Tax Adv).

(Dkt. 16-2, Exhibit 4, ¶18)

**4.    The Experience and Views of Counsel Support Approval.**

MOTION FOR FINAL APPROVAL OF CLASS ACTION

Courts may rely on the "experience and views of counsel" in deciding whether to approve class settlements. *Officers for Justice*, 688 F.2d at 625; *see also Churchill Vill.*, 361 F.3d at 576-77 (upholding a class settlement based on the experience and views of counsel).

Class Counsel believes that the Settlement represents a fair, reasonable, and adequate outcome to this litigation. Class Counsel has considerable experience in wage-and-hour class action litigation under California and federal law. (Declaration of Matthew Righetti in Support of Final Approval; *Also See, e.g.*, Declaration of Matthew Righetti in Support of Preliminary Approval of Settlement with Defendant) (Dkt. 16-2), ¶3.)

### 5.    The Fairness of Distribution Supports Approval.

Finally, the Settlement merits approval because it fairly distributes the Settlement Amount. The Settlement proposes to award the class representative, Mr. Prizler $10,000.00 as a Class Representative Payment. Class Counsel is only seeking a portion of their actual out-of-pocket expenses. (Dkt. 16-2, Exhibit 1, ¶38). The parties propose to pay $7,500.00 to the LWDA. Finally, the distribution to Participating Class Members is nearly twice the amount initially estimated as the anticipated value of their claims based upon a pro rata distribution of net settlement funds according to weeks worked.

The Class Members have been provided with sufficient notice of the settlement. Rule 23(e)(1), Federal Rules of Civil Procedure, requires class members to receive notice of a settlement in "a reasonable manner." It is not necessary for class members need not

MOTION FOR FINAL APPROVAL OF CLASS ACTION

receive "actual notice."  *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Instead, notice should be provided in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Class Counsel put in place a process so that Class Members received sufficient notice by sending a Class Notice Packet through first-class mail to their last-known home address based upon last address in the employer (AT&T Mobility's) records and verification of accuracy via the National Change of Address Database on file with the USPS. (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶3).  87 Notice Packets were re-mailed after being returned with forwarding addresses.  Of the 287 Notice Packets that were returned without forwarding addresses Gilardi was able to use skip trace methods which resulted in Notice Packets being re-mailed to 173 of those class members.  Further *supplemental* notice was accomplished by (a) establishing the case website (www.prizlersettlement.com) where class members could obtain information about the settlement, submit online claims and download the Notice Packet and other case-related information, (b) establishing a toll-free telephone number that class members could call and listen to Frequently Asked Questions, request that the Notice Packet be mailed to them, or request to speak to a live operator.  The phone line has been staffed with English and Spanish speaking operators available Monday through Friday between the hours of 7:00 a.m. and 5:00 p.m. Pacific

Time.  (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶4-7).  Finally, on May 23, 2014, Gilardi caused a Reminder Postcard to be printed and mailed to the 3,002 class members who, as of that date, had not responded to the notice.  (Exhibit 3 to Declaration of Matthew Righetti, Decl. of Derek Smith Re: Notice And Claims Administration, ¶8).

The Notice Packet provided clear information to the Class Members on their right to participate, to object to the Settlement or to elect not to participate in the Settlement and pursue their own remedies, and to appear in person or by counsel at the final approval hearing and be heard regarding approval of the Settlement.  The content of the notice, which this Court approved (Dkt. 16), clearly suffices under federal law.  *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally").  Class Members have thus received adequate notice of the Settlement.

Lastly, as set forth in the Court's preliminary approval order, on March 31, 2014, Plaintiff provided notice of the proposed settlement to the California Labor Workforce Development Agency permitting them an opportunity to object.  As of today's date, counsel have not received any comments or objections to the Settlement from the California Labor Workforce Development Agency and to the best of their knowledge and belief, no such comments or objections have been filed with this Court.  (Declaration of Matthew Righetti, ¶27)

**6.     Class Members Responded Extremely Favorably to the Settlement.**

The positive response of class members to the Settlement strongly supports its final approval.  Courts should consider "the reaction of the class members to the proposed settlement" in deciding whether to approve it.  *Officers for Justice*, 688 F.2d at 625.  The response of class members "strongly favors" settlement even when *10 percent* of such members object to a proposed settlement.  *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990); *see also Shlensky v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978) (upholding settlement because vast majority of class members did not object to it).  Here, *two* of the Class Members have objected to the Settlement and only seven, far less than one percent of all Class Members, elected not to participate.  (*See* Righetti Decl., ¶ 28-29.)  Such a positive response merits final approval of the Settlement.

**OBJECTIONS:**

Timely objections were lodged by two class members, Mr. Previn Hollingsworth and Mr. Justin Bradley.  Both objectors also filed timely claims.  Mr. Hollingsworth's objection is attached to the Declaration of M. Righetti as Exhibit 5.  The objection of Mr. Bradley is found at Dkt. #23.   The objections raise separate issues as discussed hereinbelow.

**a.     Mr. Hollingsworth:**  Mr. Hollingsworth claims he received text messages and his time reviewing and responding to the text messages was not counted as hours worked.   Mr. Hollingsworth also claims meal/break violations due to work

demands.  Class Counsel has been informed by AT&T Mobility that Mr. Hollingsworth was last on AT&T Mobility's payroll in June 2011, and that he executed a settlement and general release in May 2013 in connection with a lawsuit entitled *Abedrabo* in the Central District, case no. 11-cv-01388-VAP.  According to AT&T Mobility, the claims raised by Mr. Hollingsworth were settled and released in the Abedrabo matter as more fully discussed in AT&T Mobility's brief regarding the objectors.

      **b.**    **Mr. Bradley:**  Mr. Bradley objects to the scope of the release by asserting that the release is overbroad.  Mr. Bradley's objection (Dkt. #23) claims that releases should not have a "draconian scope."  Rather, releases should "track the extent and breadth of Plaintiff's allegations" and should not release "unrelated claims of any kind or nature."  Objection, 5:1-3.

      Mr. Bradley's contention that the proposed release is "draconian" and/or releases "unrelated claims of any nature" is simply not so.  This is evident from reading the proposed release.  Plaintiff has underlined the qualifying and limiting language which refutes Mr. Bradley's argument:

> "Released Claims" means all claims alleged in the Complaint, including any and all claims, demands, rights, liabilities and/or causes of action of any nature and description whatsoever, known or unknown, in law or in equity, whether or not concealed or hidden, asserted or that might have been asserted by Plaintiff or any Settlement Class Member <u>relating to or arising</u>

from the alleged non-payment or under-payment of overtime compensation based upon commissions paid to Plaintiff or any Settlement Class Member by Defendants or any Released Parties during the Class Period.   This includes, but is not limited to claims or allegations that Defendants: (1) improperly failed to pay minimum wage, overtime or any other wages due under California state law with respect to commission payments made to Class Members during the Class Period; (2) failed to timely furnish accurate itemized wage statements; (3) failed to timely pay final wages upon termination of employment; (4) failed to timely furnish accurate itemized wage statements; (5) engaged in any unfair business practices alleged in the Action; and (6) engaged in conduct subjecting it to any statutory or civil penalties under any local, state, or federal statute or ordinance based upon the alleged failure to include commission payments in the regular rate of pay for purposes of calculating overtime premium pay, including without limitation, California Labor Code section 2698, et seq. ("The Private Attorneys General Act of 2004" or "PAGA") and Labor Code Sections 203 and 226; and any other claims based on any facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act which relate to or arise out of, in any way, the alleged non-payment or under-payment of overtime compensation based upon commissions paid to Plaintiff or any Settlement Class Member by Defendants or any Released

MOTION FOR FINAL APPROVAL OF CLASS ACTION

<u>Parties.</u>

This release is narrowly limited to the claims that were alleged and settled.  The proposed release falls far short of the "draconian" or "general" release of claims which courts have frowned upon and which forms the basis for Mr. Bradley's position.  The release of "unknown claims" does not expand the scope of the release.  Rather, the confirmation that "unknown" claims are released is tethered again to the limitations set forth above for Released Claims.  Finally, unlike many class settlements, the proposed release does <u>not</u> include a release of any class member's rights under Civil Code Section 1542, to wit:

> 1542.  A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The proposed release language is appropriate because the released claims "appropriately track the breadth of Plaintiffs' allegations in the action and the settlement do[es] not release unrelated claims that class members may have against defendants." *Collins v. Cargill Meat Solutions Corp.* 274 F.R.D. 294, 303 (E.D.Cal.,2011); also see, *Vasquez v. Coast Valley Roofing, Inc.,* 670 F.Supp.2d 1114, 1126 (E.D.Cal.2009) [finding release proper because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants."].

MOTION FOR FINAL APPROVAL OF CLASS ACTION

Mr. Bradley has neither filed a lawsuit, nor filed a LWDA claim, yet has decided to forego his right to opt-out and has filed a claim in this case. The merits of Mr. Bradley's "quota relief" allegation is more appropriately and intelligently addressed by AT&T Mobility, yet it appears at first blush that this claim would not be a statutory claim. Instead, it appears to be a contract claim covered by the CBA.

## V.   CONCLUSION

The Settlement provides substantial benefits to Class Members, and represents a fair, reasonable, and adequate agreement in all respects. Accordingly, Plaintiff requests that this Court grant this motion for final approval of the Settlement.

Respectfully submitted,

Dated:  August  21, 2014.      MATTHEW RIGHETTI
                               RIGHETTI • GLUGOSKI, P.C.


By: /s/ Matthew Righetti

Matthew Righetti
Attorneys for Plaintiff Andrew J. Prizler

MOTION FOR FINAL APPROVAL OF CLASS ACTION